[Cite as *V.C. v O.C.*, 2021-Ohio-1491.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

V.C., : 

       No. 109988

: 

    Plaintiff-Appellee,

: 

    v.

: 

O.C.,

: 

    Defendant-Appellant.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED
IN PART; REMANDED
**RELEASED AND JOURNALIZED:** April 29, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case Nos. DR-11-338367 and DR-18-371176

---

### *Appearances:*

Ronald A. Skingle, *for appellee* Mother.

John H. Lawson, *for appellees* Children.

O.C., *pro se.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Father-appellant, O.C. ("Father"), pro se, appeals from the trial court's order terminating a shared parenting plan, designating Mother-appellee,

V.C. ("Mother"), as residential parent and legal custodian of the parties' three minor children and ordering Father to pay $2,444.83 per month in child support and costs. Father also challenges several of the trial court's interim orders relating to child custody and child support, the trial court's denial of his motion to remove the guardian ad litem and certain evidentiary rulings.

{¶ 2} For the reasons that follow, we find that the trial court did not abuse its discretion in terminating the parties' shared parenting plan and designating Mother as residential parent and legal custodian of the parties' minor children. However, we find that the trial court failed to apply the appropriate standard and, therefore, abused its discretion, in determining the amount of Father's child support obligation. Accordingly, we reverse the trial court's child support order and remand for proceedings on that issue. We otherwise affirm the trial court's decision.

**Procedural and Factual Background**

{¶ 3} Mother and Father were married on August 21, 1999 in Nigeria. The couple later immigrated to the United States. They have four children — daughter C.C. (d.o.b. 1/29/00), son C.F.C. (d.o.b. 3/27/03), daughter C.T.C. (d.o.b. 8/24/06) and son U.C.C. (d.o.b. 5/28/10).

{¶ 4} On September 13, 2011, Mother filed a complaint for legal separation in Cuyahoga C.P. No. DR-11-338367. On March 26, 2013, the couple was granted a legal separation. The judgment entry of legal separation (the "separation order") incorporated a shared parenting plan for the parties' minor children. Under the shared parenting plan, Mother and Father were both designated residential parents

and legal custodians of their minor children and were to have alternate weeks of parenting time, i.e., following a 50/50 parenting time schedule. Each week, the parent who was then "in possession" of the children was to deliver the children to the other parent on Sunday evening at 5:00 p.m. At that time, Mother and Father, who are both physicians, resided in separate residences in Solon. Although Mother was designated the child support obligor in the separation order, no child support was ordered to be paid under the separation order when Mother was providing private health insurance for the children. The separation agreement provided that the designation of Mother as child support obligor and Father as child support obligee was "without prejudice" and that "[u]pon the filing of a motion to modify child support * * *, there shall be a de novo determination as to this designation."

{¶ 5} In or around October 2016, Father obtained a new position. He began working Monday-Friday, 8:00 a.m. – 4:30 p.m., at the Veteran's Administration Medical Center in Marietta, Ohio, more than a couple hours commute from his Solon residence, and established a second residence in or near Marietta, Ohio.[1] Father did not initially inform Mother of his change in employment. On the days he worked during his scheduled parenting time, Father remained in Marietta and hired nanny services to care for the children after school, left the younger children in the care of the couple's eldest daughter overnight and before school and "cyber-

---

[1] There is some confusion in the record as to whether Father worked and maintained an apartment in Marietta, Ohio or in Chillicothe, Ohio. For purposes of this appeal, we use Marietta, Ohio.

parented" his children from Marietta, using video surveillance and communicating with the children via FaceTime or Skype.

{¶ 6} At this time, Mother worked 19 weeks per year plus an additional three nights per month at the Cleveland Clinic's Medina campus. When Mother was required to work during her parenting time, she employed a nanny to care for the minor children.

{¶ 7} On February 1, 2018, Mother filed a motion to terminate the shared parenting plan and to modify the parenting time schedule, claiming that the co-parenting arrangement provided for in the shared parenting plan had proven to be "unworkable." At this time, all of the parties' three minor children were exhibiting behavioral issues and difficulties with their school work. Mother alleged that Father refused to comply with the terms and spirit of the shared parenting plan, refusing to make joint decisions relating to the health care and education of the children and attempting to "sabotage or undermine" her relationship with the children. She further alleged that due to Father's new job in Marietta, he was unable to care for the children during his scheduled parenting time. Mother requested that the court modify the parenting time schedule, that she be designated the sole residential parent of her then-three minor children[2] and that the children reside primarily with her.

---

[2] C.C. turned 18 0n January 29, 2018. Following her graduation from high school, she attended The Ohio State University. C.F.C. turned 18 on March 27, 2021 during the pendency of this appeal.

**{¶ 8}** On March 21, 2018, Father filed a complaint for divorce in Cuyahoga C.P. No. DR-18-371176 (the "divorce action"). A final divorce decree was entered on April 25, 2018.

**{¶ 9}** The trial court appointed Attorney John Lawson as counsel and guardian ad litem for the children (the "GAL") and the matter was referred to the court's family evaluation services ("FES") for evaluation pursuant to R.C. 3109.04(C).

**{¶ 10}** In the spring of 2018, a dispute arose between the parties regarding the education of the couple's youngest child, U.C.C., who was exhibiting significant behavioral issues at school. Father filed a motion for a temporary restraining order in the divorce action to prevent Mother and the Solon City School District (the "School District") from conducting a disability evaluation of U.C.C. Over Father's objection, but with Mother's consent and involvement, the School District evaluated U.C.C. and determined that he had an emotional disability, qualifying him for special education services. Over Father's objection, U.C.C. was transferred to an alternative school, where his behavioral issues improved significantly.

**{¶ 11}** In May 2018, Mother filed a motion for an emergency ex parte order designating Mother the residential parent for school purposes with authority to make school decisions for U.C.C. The court granted the motion. The trial court denied Father's motion to vacate the order, and Father filed a motion for reconsideration. Following a hearing at which Mother, Father and representatives from the School District testified, the magistrate denied Father's motion for

reconsideration, concluding that it was in the best interest of U.C.C. for Mother to continue to be designated the residential parent for school purposes and be granted temporary authority to make schooling decisions for the child until the pending parenting motions were resolved. Overruling Father's objections, the trial court approved and adopted the magistrate's decision.

{¶ 12} Father filed a due process complaint with the Ohio Department of Education, asserting that the School District had improperly identified U.C.C. as a child with a disability. Following an administrative hearing on the matter, the hearing officer determined that Father had failed to meet his burden of proof that U.C.C. was inappropriately identified as a child with a disability. Father appealed and the decision was affirmed.[3]

{¶ 13} On July 25, 2018, Father filed a motion to remove the GAL, alleging that the GAL was "pre-disposed to making recommendations that favor" Mother and asserting that "[a]s a result," the meetings between them had become "increasingly contentious." The trial court denied the motion.

{¶ 14} In or around September 2018, after C.C. went off to college, Father discontinued his cyber-parenting and began commuting on a daily basis between Solon and Marietta during his parenting time weeks, employing nannies to see the children off to school in the morning after he left for work.

---

[3] Father filed a federal lawsuit challenging the decision, but his complaint was dismissed for lack of standing. The Sixth Circuit Court of Appeals affirmed. *See [Father] v. Solon City School Dist.,* 6th Cir. No. 19-3574, 2020 U.S. App. LEXIS 12863 (Apr. 20, 2020). The United States Supreme Court denied certiorari. *[Father] v. Solon City School Dist.,* 141 S.Ct. 816, 208 L.Ed.2d 398 (2020).

{¶ 15} On November 25, 2018, Father filed a motion for custody and for termination of the shared parenting plan in the divorce action. On December 10, 2018, Father filed a motion to show cause: contempt of court, seeking to enforce his parental rights in the divorce action. In December 2018, the legal separation action and the divorce action were consolidated and the pending motions in the consolidated cases were set for hearing. On January 7, 2019, Father filed an "amended motion to show cause: contempt of court," claiming that Mother had failed to comply with the terms of the shared parenting plan, including by "alienat[ing] their children from him" and "undermining his efforts to help their children."

{¶ 16} In April 2019, C.F.C. was arrested after he struck Father in the head with his fist. As a result of the incident, he was adjudicated an unruly child in Cuyahoga C.P. No. DL-19-04858.

**The Hearing**

{¶ 17} A hearing on the pending motions commenced on July 25, 2019. The hearing continued on July 26, 2019, October 7, 2019, January 31, 2020 and August 5, 2020.[4] Prior to the hearing, the GAL filed a motion in limine to preclude the parties from presenting evidence regarding events that occurred before the trial court adopted the shared parenting plan. Over Father's objection, the trial court granted the motion.

---

[4] Father appeared pro se on July 25 and 26, 2019 and August 5, 2020. Father was represented by counsel on October 7, 2019 and January 31, 2020.

**{¶ 18}** At the hearing, the trial court reportedly heard testimony from six witnesses, including Mother and Father, C.C., one of U.C.C.'s former teachers, the FES evaluator and the GAL. The parties also submitted a number of exhibits. Father did not order a transcript of the hearing. Accordingly, a transcript of the proceedings is not part of the record on appeal.

### Interim Custody and Child Support Orders

**{¶ 19}** On July 30, 2019, after the first two days of the hearing, and after the trial court had conducted an in camera interview with the children and the GAL, the trial court issued an interim order, temporarily terminating the parties' shared parenting plan and designating Mother "the custodial parent" of the three minor children "with full decision-making authority on all issues" (the "interim child custody order"). Father was granted parenting time in accordance with the Cuyahoga County Standard Visitation Schedule, i.e., every Wednesday overnight and alternating weekends plus time during holidays, school vacations and days of special meaning. Father was also ordered to pay Mother $1,184.39 per month in child support for the three minor children beginning August 1, 2019.

**{¶ 20}** On September 19, 2019, Father filed an emergency motion to vacate the interim child custody order, arguing that the children were "increasingly alienated" from Father and were lacking sufficient exposure to Father's "disciplinary structure." The trial court denied the motion.

**{¶ 21}** On October 11, 2019, Mother filed a motion to modify temporary child support, requesting that Father's temporary monthly child support obligation be

increased from $1,184.39 to $2,444.83 for the couple's three minor children. Mother attached a sole/shared child support computation worksheet dated October 9, 2019 and copies of her paystub dated August 16, 2019 and Father's paystubs dated April 5, 2019 and August 30, 2019 in support of her request. Mother's computations, as set forth in the attached child support worksheet, were based on the following:

> Mother's annual income — $248,214.00
> Father's annual income — $220,644.00
> Mother's annual out-of-pocket insurance premiums — $15,476.16
> Mother's actual annual child care expenses — $18,000.00
> Father's annual out-of-pocket insurance premiums — $0
> Father's annual child care expenses — $0[5]

{¶ 22} On October 24, 2019, the trial court granted the motion, "approved and adopted" the child support worksheet attached to Mother's motion and ordered Father to pay temporary monthly child support of $2,444.83 ($2,348.32 plus $48.07 for cash medical plus the processing fee) effective October 15, 2019. The following day, Father filed a motion to vacate the temporary child support order and requested an oral hearing, arguing that: (1) the order was issued before he had an opportunity to file a timely response to Mother's motion, (2) the order was premature because the trial court had ordered the parties to file updated financial affidavits by November 15, 2019, (3) the order did not comply with R.C. 3119.04 and (4) the income and out-of-pocket insurance premium figures referenced in the child

---

[5] It is not clear, based on the documents submitted with the motion, how the income and out-of-pocket insurance premium figures referenced in the attached child support worksheet were calculated.

support worksheet attached to Mother's motion were inaccurate based on the paystubs submitted with Mother's motion.

{¶ 23} On November 6, 2019, the trial court "sustained" Father's request for an oral hearing on these issues, indicated that "these issues will be heard at the commencement of the scheduled [t]rial dates of January 30 and 31, 2020" and stated that Father's "motion to vacate the current child support orders is taken under advisement regarding the above dates." On November 6, 2019, Father filed an updated affidavit of income and expenses with the trial court. He then filed a motion to stay the October 24, 2019 temporary child support order until the matter could be heard on January 30 and 31, 2020. The trial court denied Father's motion to stay. The trial court did not rule on Father's motion to vacate the October 24, 2019 temporary child support order when the hearing was continued on January 31, 2020.

{¶ 24} On January 31, 2020, the parties filed stipulations, including stipulations regarding their residence(s), employment, income, child care expenses and parenting time schedule. With respect to Mother, the parties stipulated that Mother worked as a physician at the Cleveland Clinic's Medina Campus on "[a]lternate [w]eeks, Monday through Sunday, 7:30 a.m. through * * * 5:30 p.m." and "[t]hree (3) nights per month, 4 p.m. though 7:30 p.m."; that her "[t]otal 2019 W-2 [i]ncome" was $264,352.34 and that her annual work-related child care costs were $21,600 ($900 per week). With respect to Father, the parties stipulated that Father was employed as a physician at the Veteran's Administration Medical Center

in Marietta, Ohio, Monday through Friday, 8:00 a.m. through 4:30 p.m., and at the Mobile Hyperbaric Centers, L.L.C. in Cleveland, Ohio, Saturdays from 8:00 a.m. through 10:00 a.m.; that his "total 2019 W-2 [i]ncome" was $199,053,05; that his "[a]nnual [h]ealth [c]are [p]remium including children" was $6,973.46 and that his annual work-related child care costs was $4,320.00 ($180.00 per week).

{¶ 25} On March 19, 2020 and April 11, 2020, Mother filed motions requesting that the trial court direct the Cuyahoga County Office of Child Support Services ("OCSS") to disburse all child support Father had paid to her. Mother claimed that OCSS had placed a "hold" on her account due to confusion surrounding the trial court's orders (1) granting Father's request for a hearing on the issue of child support but (2) denying Father's motion to stay the trial court's October 24, 2019 temporary child support order. Mother asserted that she had not received any child support since July 24, 2019. Father opposed the motions. On May 8, 2020, the trial court granted these motions.

**The GAL's Reports and Recommendations**

{¶ 26} The GAL filed three written reports that are part of the record on appeal. On July 18, 2019, the GAL filed his initial report in which he indicated that he "strongly believe[d] that the Shared Parenting Plan need[ed] to be terminated."[6]

---

[6] As stated in the GAL's reports, in developing his recommendations in this case, the GAL spoke with both parents and the three minor children on multiple occasions as well as with C.C., the parents' attorneys, the children's nannies, the current FES evaluator, the children's teachers, school psychologists, other school representatives, the children's doctors, the prior FES evaluators, the prior guardian ad litem for the children and several other individuals. The GAL indicated that he also reviewed numerous documents, including the separation agreement and shared parenting plan, FES evaluation reports,

{¶ 27} In his report, the GAL discussed how the parents interacted with and supervised their children during their alternate weeks of parenting time and detailed the significant behavioral issues and academic difficulties each of the children was having in school. The GAL reported that Father was continuing to use cameras to electronically monitor his children and that when Father was working in Marietta, he was present for only "short periods of time * * * when the [c]hildren are available and awake" during his scheduled parenting time. The GAL reported that Father had canceled medical appointments for the children and documented Father's aggressive interactions with the children's medical providers and unwillingness to cooperate with Mother in obtaining medical care, mental health treatment and academic assistance for the children. The GAL indicated that the parents "do not communicate at all and are very hostile to each other" and "cannot agree on issues involving the children."

{¶ 28} The GAL reported that although Father "has been very rigid in his thinking" and "incessantly blames the Mother for all of the [c]hildren's problems since 2010," Mother has taken "responsibility for her part" in the children's behavior problems. The GAL recommended that the shared parenting plan be terminated, that Mother be designated the residential parent for school purposes, that a new parenting schedule be developed based on when the children can live with each parent for full 24-hour periods and that all medical, mental health and school

various emails and other documents provided by the parents, school records, the parents' discovery responses, documentation regarding cancelled medical and mental health appointments and documents relating to the juvenile delinquency case involving C.F.C.

decisions be made by Mother, granting Father the right to "significant and meaningful input" in those decisions, but not the authority to cancel appointments.

{¶ 29} On October 4, 2019, the GAL filed a "follow-up interim guardian ad litem report" in which he addressed developments since the trial court had issued its July 30, 2019 interim custody order. The GAL provided detailed information regarding each of the children's progress with behavioral issues and their academic performance as reported by the parents and the children's schools.

{¶ 30} The GAL indicated that he was "confident" that the children were "adapting to the new schedule and that it was in their best interests." He noted, however, that "Father strongly disagrees with this premise and believes that all of the [c]hildren's situations are worsening because they do not have the discipline that he would give them." The GAL reported that both parents were having some difficulty adjusting to their 13-year-old daughter "acting like a stereotypical teenager" and being, at times, "reactive and defiant." He reported that Mother had reached out to Father with emails about the children, but that Father refused to work with Mother to resolve the issues raised in the emails and, instead, used the information in the emails against her, "blam[ing] the Mother for nearly everything." He indicated that Father "cannot seem to put his [c]hildren's needs [above] his own," that Father may need "some parenting training" and that Father had been "very aggressive and insulting," alleging that the GAL and Mother's counsel were conspiring with the School District "to keep his younger [s]on labeled as 'disabled.'"

{¶ 31} On November 13, 2019, Father filed a "sworn statement of facts in rebuttal to GAL Updated Report of October 4, 2019." The GAL filed a motion to strike Father's rebuttal statement, and the trial court granted the motion.

{¶ 32} On August 27, 2020, the GAL filed a final, supplemental report. Once again, the GAL provided detailed information regarding each of the children's progress with behavioral issues and their academic performance.

{¶ 33} The GAL indicated that once the governor closed the schools in March 2020, "significant problems" occurred with the children, particularly the older children, who were not completing their assignments and were having conflicts with the new nanny that Mother had hired to supervise the children when she was at work. The GAL reported that after the schools closed, an effort was made to have both parents "share the responsibility" of the children and granting Father additional parenting time with the children, but that Father "rejected Mother's proposal." The GAL reported that Mother had stated that she was not certain she could continue to manage the misbehavior of the older children and that, at one point, Mother had proposed to Father that he take custody of the two older children. The GAL further reported that Mother had indicated that she was hopeful that once school reopened the children would have more structure and their behavior would improve.

{¶ 34} The GAL expressed concern about the older children being placed in Father's care if Father was still working in Marietta because he could not offer

"traditional parenting supervision or assistance" to the children during the work week.

{¶ 35} The GAL stated that he had met with all three minor children on April 24, 2020 and July 20, 2020. He reported that all three children clearly indicated that they did not want to change the parenting schedule then in effect. The GAL stated that he "continue[d] to stand by [his] recommendations" in his July 18, 2019 report.

**Recommendations of FES Evaluator**

{¶ 36} The record also includes a detailed report from the FES evaluator dated December 19, 2018.[7] In that report, the FES evaluator indicated that the parents were "extremely hostile towards each other and rarely agreed on anything." Although the FES evaluator stated that he "did not question [Father's] love for or commitment to the success of his children," he stated that Father's "insistence that the children do not have any real behavioral problems, or that they only act out when they are not with him, is quite concerning" given that information provided by the children's nannies and reported in school, police and other records indicate that the children "have had behavioral problems on both parent's time." (Emphasis

---

[7] According to the FES evaluator's report, in developing the recommendations set forth in his report, he interviewed both parents and the minor children in June 2018, as well as communicated with the children's nannies, one of the children's doctors, a friend of the family and the GAL. The FES evaluator indicated that he also reviewed numerous documents, including reports from prior custody evaluations in 2012 and 2013, court filings, correspondence from C.C., school records, records from the Cuyahoga County Division of Children and Family Services, police department records, medical records for the children, "[m]iscellaneous collateral materials" provided by the parents and "research literature in the area of relocation and custody."

deleted.)   He noted that although there "seem[ed] to be some documented history of [Mother] reaching out and making some effort to peacefully co-parent," it would be "hard to imagine" that "her own antipathy towards [Father] has not contributed to the ongoing problems as well."

{¶ 37} The FES evaluator found that the current shared parenting arrangement "has not worked well" and "recommended that a significant break in the status quo be explored."   At that time, the FES evaluator recommended that "[b]oth parents should retain legal custody, with each being named residential parent while the children are in their care."   However, the FES evaluator also recommended that, given Father's employment in Marietta, Mother be granted residential custody for school purposes, that Father receive "extra time" with the children on weekends and extended breaks from school and that, due to Father "continuing to block every effort [Mother] makes," Mother be given the final decision-making authority regarding school and medical decisions.[8]

**Proposed Findings of Fact and Conclusions of Law**

{¶ 38} At the conclusion of the hearing, the trial court issued an order, granting the parties leave to file written final arguments, proposed findings of fact and conclusions of law and proposed final judgment entries.   On August 28, 2020,

---

[8] It is unclear, based on the limited record before us, whether the FES evaluator submitted additional reports or offered additional (or different) information or recommendations during his testimony at the hearing.   In its September 25, 2020 judgment entry, discussed below, the trial court stated that recommendations of the GAL and FES evaluator were "consistent."   Given the absent of a transcript of the hearing, we presume this is correct.

Mother filed a document captioned "proposed findings of fact and conclusions of law" and Father filed a document captioned "proposed statements of fact and conclusions of law." Neither party included a proposed judgment entry.

{¶ 39} On September 9, 2020, the trial court adopted Mother's proposed findings of fact and conclusions of law, indicating that Mother "did timely file" proposed findings of fact and conclusions of law but that Father "did not." The trial court directed Mother to submit a final journal entry consistent with the trial court's orders within 14 days "to finalize this case." The following day, Father filed, pro se, a notice of appeal.

{¶ 40} On September 11, 2020, this court, sua sponte, dismissed Father's appeal for lack of a final, appealable order.

**Trial Court's Final Judgment**

{¶ 41} On September 25, 2020, the trial court issued its final judgment entry, terminating the parties' shared parenting plan, designating Mother as the residential parent and legal custodian of the parties' three minor children and ordering Father to pay $2,444.83 per month (including cash medical and the processing fee).

{¶ 42} The trial court indicated that its decision was based on the testimony and exhibits presented at the hearing, including the reports and recommendations of the GAL and FES evaluator. The trial court also took judicial notice pursuant to Evid.R. 201 of the "pleadings, orders and other papers" filed in Father's case against the School District and the juvenile delinquency case involving C.F.C.

**{¶ 43}** Father, once again, appealed, pro se, raising the following seven assignments of error for review:

Assignment of Error No. 1: The trial court erred and abused its discretion, when on 07/30/2019, it terminated the shared parenting plan and granted mother full custody in the interim, without an impartial determination of a change in circumstances and the correct custody modification that is necessary for the best interest of the children, as required by O.R.C. 3109.04 (E).

Assignment of Error No. 2: The trial court erred and abused its discretion, when on 09/27/2019, it dismissed father's motion to vacate the interim child custody order of 07/30/2019, despite the evidence that the circumstances of the children got worse under the interim order compared to the shared parenting decree, which is contrary to the requirements of O.R.C. 3109.04 (E).

Assignment of Error No. 3: The trial court erred and abused its discretion when on 09/09/2020, it adopted mother's statement of facts and conclusions of law for the purpose of making its final judgement entry, while falsely declaring father's statement of facts and conclusions of law, as untimely, and completely excluded it in the judgement. (Amendments, 1, 5, 9, 14).

Assignment of Error No. 4: The trial court erred and abused its discretion, when on 09/25/2020, it made its finalized judgement entry, granting full custody and child support to mother, although mother did not meet the burden of proof and the court did not conduct an impartial review of the facts of the case in the best interest of the children, as required by O.R.C. 3109.04(E).

Assignment of Error No. 5: The trial court erred and abused its discretion in its orders of 07/30/2019, 10/24/2019, 12/02/2019, 05/05/2020 and 08/13/2020, in determining that father should have child support obligation to mother, the amount of the child support obligation and in disbursing the collected amount from father to mother, although the orders were based on incorrect data and were not in the best interest of the children, as required by O.R.C. 3119.04, O.R.C. 3119.22 and O.R.C. 3119.23.

Assignment of Error No. 6: The trial court erred and abused its discretion in excluding father's narratives in case # DR 18 371176, after

it was consolidated into DR 11 338367 and in making some orders which obstructed the use of evidence relevant for a correct determination of the capabilities of the parents to care for the children, by denying the following motions: motion to vacate (Mother, R. 156); motion to remove the GAL (Mother, R. 177); motion to dismiss motion in limine (Mother, R.192); objection to magistrate's decision (Mother, R. 191); motion to enforce parental rights (Mother, R. 226); and in refusing to admit some relevant exhibits during trial, including striking out defendant's rebuttal of GAL's report and dismissing defendant's motion to show cause (Mother, R. 343). (Sup. R48; Amend. 14)

Assignment of Error No. 7: The trial court erred and abused its discretion in asking father to bear the court cost[s] despite the conduct of mother, who initiated the litigation and presented incorrect data to the court that led to orders, which placed father in financial hardship and are not in compliance with the recommendations of O.R.C. 3105.73 and O.R.C. 3109.04 (E).

{¶ 44} For ease of discussion, we address Father's assignments of error out of order and together where appropriate.

**Law and Analysis**

### Interim, Temporary Orders

{¶ 45} In his first, second and fifth assignments of error, Father claims error in various temporary orders issued by the trial court, including interim custody orders and child support orders, while the parties' parenting motions were pending. Father contends that the trial court "erred and abused its discretion" in entering the July 30, 2019 interim child custody order, which terminated the parties' shared parenting plan and awarded custody of the children to Mother, and in denying Father's September 19, 2019 motion to vacate the interim child custody because the orders were "arbitrarily" entered without "an impartial consideration of a change in circumstances," were contrary to the best interest of the children and were "not

supported by the facts of the case." Father also contends that the trial court "erred and abused its discretion" in ordering that "[F]ather should have [a] child support obligation to [M]other," in its determination of the amount of his temporary child support obligation and "in disbursing the collected amount" to Mother — as set forth in the trial court's July 30, 2019, October 24, 2019, December 2, 2019, May 5, 2020 and August 13, 2020 orders — because the trial court's interim child support orders were "based on incorrect data" and were not "in the best interest of the children." These assignments of error are not reviewable.

{¶ 46} Temporary orders allocating custody between parents or ordering temporary child support are interlocutory orders, not final judgments. *See, e.g., In re C.T-T.*, 8th Dist. Cuyahoga No. 107059, 2019-Ohio-3362, ¶ 10, citing *In re B.A.L.*, 2016-Ohio-300, 47 N.E.3d 187, ¶ 25 (8th Dist.) (Appellate court had no jurisdiction to review temporary custody order "because such an order is not a final, appealable order. A temporary order allocating custody between parents is not a final judgment, but rather is an interlocutory order."); *see also Baker-Chaney v. Chaney*, 5th Dist. Holmes No. 16CA005, 2017-Ohio-5548, ¶ 35; *Huffer v. Huffer*, 10th Dist. Franklin No. 09AP-574, 2010-Ohio-1223, ¶ 12; *State ex rel. Thompson v. Spon*, 83 Ohio St.3d 551, 554, 700 N.E.2d 1281 (1998). "In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree." *Colom v. Colom*, 58 Ohio St.2d 245, 389

N.E.2d 856 (1979), syllabus; *In re C.T-T.* at ¶ 10. In other words, the court's final order "supersedes the temporary orders and corrects any error." *See, e.g., Bonn v. Bonn*, 10th Dist. Franklin No. 12AP-1047, 2013-Ohio-2313, ¶ 12; *In re J.L.R.*, 4th Dist. Washington No. 08CA17, 2009-Ohio-5812, ¶ 29. Because the trial court's temporary orders in this case merged into the September 25, 2020 final judgment, any possible error contained in the temporary orders is now moot. *See, e.g., In re C.T-T.* at ¶ 10; *Baker-Chaney* at ¶ 35; *Bonn* at ¶ 12; *Huffer* at ¶ 12; *Bowker v. Bowker*, 5th Dist. Delaware No. 10CAF110085, 2011-Ohio-4524, ¶ 44 ("[T]emporary orders are merged into the final decree and cannot be claimed as error."), citing *Ruby v. Ruby*, 5th Dist. Coshocton No. 99-CA-4, 1999 Ohio App. LEXIS 3877 (Aug. 11, 1999).

{¶ 47} Accordingly, we overrule Father's first, second and fifth assignments of error.

### Trial Court's Adoption of Mother's Proposed Findings of Fact and Conclusions of Law

{¶ 48} In his third assignment of error, Father contends that the trial court erred and abused its discretion in adopting Mother's proposed findings of fact and conclusions of law and in determining that his proposed findings of fact and conclusions of law were untimely.

{¶ 49} On August 13, 2020, the trial court issued an order granting the parties leave to file written final arguments, proposed findings of fact and conclusions of law and "a final [judgment entry] as desired" by August 28, 2020. In

its September 9, 2020 journal entry adopting Mother's proposed findings of fact and conclusions of law, the trial court stated that Father had failed to timely file proposed findings of fact and conclusions of law. The docket reflects that Father timely filed a document captioned "proposed statements of fact and conclusions of law" on August 28, 2020.[9] Father, however, has not shown that he was in any way prejudiced by this error.

{¶ 50} "[T]here is nothing that per se prohibits a court from adopting a party's findings and conclusions as its own." *Mummey v. Mummey*, 7th Dist. Noble No. 10 NO 371, 2010-Ohio-4243, ¶ 16. "A court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law." *Janosek v. Janosek*, 8th Dist. Cuyahoga Nos. 86771 and 86777, 2007-Ohio-68, ¶ 149; *see also Gerston v. Parma VTA, L.L.C.*, 8th Dist. Cuyahoga No. 105572, 2018-Ohio-2185, ¶ 68-69 ("It is not per se error for a trial court to adopt, verbatim, a party's proposed findings of fact and conclusions of law. * * * Error can only be found in such a case when the findings of fact and/or conclusions of law adopted by the trial court are against the manifest weight of the evidence."), citing *Chardon Park, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Geauga No. 2003-G-2524, 2004-Ohio-7221, ¶ 39; *An v. Manson*, 10th Dist. Franklin No. 06AP-90, 2006-Ohio-6733, ¶ 15 ("[A]doption of one party's findings in preference to another's will not of itself constitute error on

---

[9] Despite its caption, Father's proposed "statements of fact" and "conclusions of law" arguably consist more of argumentative assertions than proposed findings of fact and conclusions of law.

the part of the trial court * * * absent strong indication that the trial court, in adopting proposed findings without modification, failed to take the time to carefully review the facts of law surrounding the case.").

{¶ 51} There is nothing in the record before us to suggest that the trial court in this case in any way "abdicated its responsibility" to consider the testimony and documentary evidence presented and reach its own independent conclusions. *An* at ¶ 16. Accordingly, the mere fact that the trial court adopted Mother's proposed findings of fact and conclusions of law does not in and of itself constitute error.

{¶ 52} Father's third assignment of error is overruled.

### Termination of Shared Parenting Order, Designation of Mother as Residential Parent and Legal Custodian and the Child Support Order

{¶ 53} In his fourth assignment of error, Father contends that the trial court erred and abused its discretion in granting "full custody and child support" to Mother because Mother "did not meet [her] burden of proof" and the trial court "did not conduct an impartial review of the facts of the case in the best interest of the children" as required by R.C. 3109.04(E).

### Standard of Review

{¶ 54} Decisions regarding child custody and the allocation of parental rights and responsibilities are among "the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). As such, trial courts have "wide latitude" in their consideration of the evidence when making decisions related to child custody and the allocation of

parental rights and responsibilities. *Id.* at 418. A trial court's judgment regarding the allocation of parental rights and responsibilities and determination of what is in a child's best interest in a custody matter will not be disturbed absent an abuse of discretion. *See, e.g., In re E.O.T.,* 8th Dist. Cuyahoga No. 107328, 2019-Ohio-352, ¶ 39; *In re J.W.,* 8th Dist. Cuyahoga No. 105337, 2017-Ohio-8486, ¶ 19. Likewise, "[a] trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *J.E.M. v. D.N.M.,* 8th Dist. Cuyahoga No. 109532, 2021-Ohio-67, ¶ 22, citing *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989); *N.W. v. M.W.,* 8th Dist. Cuyahoga No. 107503, 2019-Ohio- 1775, ¶ 16.

{¶ 55} A trial court abuses its discretion when its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable when "no sound reasoning process" supports that decision. *AAAA Ents. v. River Place Cmty. Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Mayer v. Mayer,* 8th Dist. Cuyahoga No. 109103, 2020-Ohio-4993, ¶ 8, quoting *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.); *see also Vail v. String,* 8th Dist. Cuyahoga No. 107122, 2019-Ohio-984, ¶ 43.

{¶ 56} A trial court's factual findings in a child custody or child support matter are reviewed under a manifest weight of the evidence standard, i.e., a

reviewing court will not reverse a trial court's factual finding in a child custody or child support matter unless it is against the manifest weight of the evidence. *See, e.g., In re N.J.V.,* 8th Dist. Cuyahoga No. 107753, 2019-Ohio-2234, ¶ 20; *Funkhouser v. Funkhouser*, 6th Dist. Erie No. E-18-039, 2019-Ohio-733, ¶ 17.

**Termination of Shared Parenting Order and Designation of Mother as Residential Parent and Legal Custodian**

{¶ 57} R.C. 3109.04 addresses the allocation of parental rights and responsibilities between the parents of a minor child. The procedures for terminating a shared parenting decree that incorporates a shared parenting plan are set forth in R.C. 3109.04(E)(2)(c)-(d). Under R.C. 3109.04(E)(2)(c), a court may terminate a prior final shared parenting plan if the court determines, on its own motion or on the request of one or both parents, that shared parenting is not in the best interest of the children. A trial court is not required to find a change in circumstances before terminating a shared parenting plan. *Bruns v. Green*, Slip Opinion No. 2020-Ohio-4787, ¶ 1, 6, 21; *In re J.L.F.*, 8th Dist. Cuyahoga No. 97405, 2012-Ohio-1748, ¶ 4, citing *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 8. Rather, the trial court need only find that termination of the shared parenting plan is in the best interest of the child. *Bruns* at ¶ 1, 6, 21 ("a trial court need consider only the best interest of the child when deciding whether to terminate a shared-parenting plan and which parent to designate as the residential and custodial parent of a minor child"); *In re A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632, ¶ 32.

{¶ 58} In determining whether shared parenting is in the best interest of a child, the trial court must consider "all relevant factors," including, but not limited to, the specific factors enumerated in R.C. 3109.04(F)(1), the factors enumerated in R.C. 3119.23[10] and the following factors specifically enumerated in R.C. 3109.04(F)(2):

> (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
>
> (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
>
> (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
>
> (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
>
> (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 59} If the trial court terminates a shared parenting decree, R.C. 3109.04(E)(2)(d) provides:

> Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

---

[10] The factors enumerated in R.C. 3119.23 primarily concern the financial circumstances, resources and expenses of the parents and the children, but the statute also requires consideration of any "[s]pecial and unusual needs of the child or children, including needs arising from the physical or psychological condition of the child or children[.]" R.C. 3119.23.

{¶ 60} If neither parent has ever requested shared parenting, the trial court, "in a manner consistent with the best interest of the children," must "allocate the parental rights and responsibilities for the care of the children primarily to one of the parents," "designate that parent as the residential parent and the legal custodian of the child" and then "divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children."  R.C. 3109.04(A)(1).

{¶ 61} In determining what allocation of parental rights and responsibilities is in the best interest of a child, the trial court must consider "all relevant factors," including, but not limited to, the specific factors enumerated in R.C. 3109.04(F)(1). The best interest factors enumerated in R.C. 3109.04(F)(1) include:  (a) the parents' wishes; (b) the wishes and concerns of the child if the court interviewed the child in chambers; (c) the child's interaction and interrelationship with parents, siblings and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the home, school and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor and facilitate court-approved parenting time; (g) any parent's failure to make all court-ordered child support payments, including arrearages; (h) whether a parent or a household member has been convicted of certain criminal offenses, a parent was found to be the perpetrator in an adjudication of an abused or neglected child or there is reason to believe a

parent acted in a manner resulting in a child being an abused or neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with a court order; and (j) whether either parent has established, or is planning to establish, a residence outside of the state.

{¶ 62} Father disputes the trial court's termination of the shared parenting plan. He contends that there was no evidence that the children's behavior and academic issues improved after the trial court entered its interim order terminating the shared parenting plan. Father also disagrees with the trial court's decision to designate Mother, rather than Father, legal custodian and residential parent of the parties' minor children. He contends that the trial court's decisions were against the manifest weight of the evidence.

{¶ 63} In support of his contention, Father goes through the trial court's findings of fact as set forth in its final judgment entry paragraph by paragraph, identifying each fact that he contends is "incorrect," "false" or "unverified" based on the evidence presented at the hearing. We are, however, limited in our ability to review this assignment of error due to Father's failure to file a transcript of the hearing.

{¶ 64} It is the appellant's duty to file the transcript or any parts of the transcript that are necessary for evaluating the trial court's decision. App.R. 9(B); *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). "This is necessarily so because an appellant bears the burden of showing error by

reference to matters in the record." *Id.*, citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). Father's failure to comply with App.R. 9 and his failure to fulfill his duty to file the parts of the transcript that are necessary to enable this court to evaluate the trial court's judgment cannot be excused on the basis that he is acting pro se. *State Farm Mut. Auto. Ins. Co. v. Williams*, 8th Dist. Cuyahoga No. 107951, 2019-Ohio-4059, ¶ 31.

{¶ 65} Without the filing of a transcript (or a statement of the evidence or proceedings under App.R. 9(C) or an agreed statement under App.R. 9(D)), this court must presume regularity in the trial court's proceedings. *Knapp* at 199 ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and, thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."). This means that we must "presume that the trial court considered all the evidence and arguments raised" and that sufficient evidence was presented to support the trial court's decision. *Miranda v. Saratoga Diagnostics*, 2012-Ohio-2633, 972 N.E.2d 145, ¶ 26 (8th Dist.); *Bartko v. Bartko*, 8th Dist. Cuyahoga No. 109272, 2020-Ohio-4302, ¶ 15, citing *Bakhtiar v. Saghafi*, 2016-Ohio-8052, 75 N.E.3d 801, ¶ 3 (8th Dist.) ("In the absence of a complete and adequate record, a reviewing court must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision.").

**{¶ 66}** In other words, without a transcript (or statement of the evidence or proceedings), we have no basis upon which to review Father's assignments of error to the extent they concern factual disputes. *Fennell v. DeMichiei*, 8th Dist. Cuyahoga No. 106966, 2019-Ohio-252, ¶ 11 ("[B]ecause [appellant] did not file a transcript of either the August 2017 or February 2018 hearings, we are unable to review her arguments to the extent they relate to factual disputes."); *In re Sparks*, 12th Dist. Butler No. CA2002-04-086, 2003-Ohio-2008, ¶ 4 (appellate court could not determine whether trial court's judgment was against the manifest weight of the evidence where appellant failed to file the pertinent trial transcript or a statement of evidence). Instead, we must accept the trial court's factual findings as true and limit our review to the trial court's legal conclusions, i.e., the trial court's application of the law to the facts. *Di Fiore v. Booker*, 8th Dist. Cuyahoga No. 108946, 2020-Ohio-3188, ¶ 18-19; *Bailey v. Bailey*, 8th Dist. Cuyahoga No. 98173, 2012-Ohio-5073, ¶ 8, citing *Snider v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-965, 2012-Ohio-1665, ¶ 8.

**{¶ 67}** Father argues that the "docketing statements and the exhibits tendered during the trial" are "adequate" to establish that the trial court's final judgment was "invalid," lacked due process, was not supported by the evidence and constituted an abuse of discretion. However, the trial court's "docketing statements" do not demonstrate what evidence was presented below. And without the transcript, we do not know which of the parties' "tendered" exhibits were admitted into evidence at the hearing. Further, without access to a transcript of the testimony

presented at the hearing, including any testimony that may have been given explaining the parties' exhibits or supplementing, contradicting or modifying information contained in those exhibits, we cannot say that any of the trial court's factual findings are against the manifest weight of the evidence.

{¶ 68} We find no reversible error on the face of the trial court's September 25, 2020 judgment entry related to its child custody determination. Although a trial court is not required to find a change in circumstances in order to terminate a shared parenting plan, in this case, the trial court nonetheless found that circumstances had changed since the date of the shared parenting order, stating

> The evidence showed that a change in circumstances has occurred in this case warranting a termination of the parties' Shared Parenting Plan and a modification of the allocation of parental rights/parenting time schedule, namely — (A) Father's decision to work in Marietta leaving his children virtually unsupervised during his scheduled parenting time; (B) Father's refusal or failure to co-parent with Mother according to the terms of their Shared Parenting Plan; (C) all three minor children's documented scholastic, social and emotional struggles and deterioration that have resulted from Father's decisions and actions.

{¶ 69} The trial court further found:

> The best interests of the minor children require that, consistent with this Court's order issued July 30, 2019, these three children continue to reside primarily with Mother, that Mother be solely responsible for making all major decisions relating to their education, health care and extra-curricular decisions, and that Father be limited to standard parenting time consistent with the Cuyahoga County's Standard Parenting Time Schedule[.]

{¶ 70} The trial court's September 25, 2020 judgment entry reflects that the trial court considered each of the R.C. 3109.04(F)(2) shared parenting best interest factors, concluding:

> "Parallel parenting" in this case pursuant to the parties' Shared Parenting Plan * * * has <u>not</u> worked for the three * * * children; in fact it has proven deleterious. The parties * * * lack the ability to co-parent — cooperate, make joint decisions and encourage the sharing of love and respect for that is necessary to ensure the success of shared parenting.

{¶ 71} The judgment entry also demonstrates that the trial court expressly considered each of the relevant factors listed in R.C. 3109.04(F)(1) in determining that designation of Mother as the residential parent and legal custodian of the children was in the children's best interest, setting forth specific findings as to each factor as follows:

> (a) The wishes of the child's parents regarding the child's care;
>
> *Each parent has requested orders placing the children in their primary care and providing him or her sole decision-making power regarding all major decisions.*
>
> (b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> *The Court has dutifully interviewed the minor children to ascertain their wishes and concerns. The guardian ad litem has also appropriately and responsibly met with and spoken with each child on numerous occasions to discuss their feelings and status, and verify their specific wishes and concerns regarding their placement.*
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

*Both parties have presented evidence in the form of testimony establishing the nature and extent of the children's relationships with them and their siblings. Sadly, there was no evidence of significant interaction or relationships between the children and others such as teachers, coaches, etc.*

(d) The child's adjustment to the child's home, school, and community;

*The children have long resided in Solon and attended the Solon Schools (with exception of [U.C.C.] since the Spring, 2019), and are ensconced and comfortable in the Solon community.*

(e) The mental and physical health of all persons involved in the situation;

*All three children have deteriorated mentally since the Shared Parenting Plan was signed and filed in March, 2013.*

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

*Mother has faithfully honored the parenting time schedule and facilitated Father's relationship with all of their children. Father has not, and has further alienated the parties' eldest daughter, [C.C.] from her Mother without the slightest feeling of regret.*

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

*Father is presently paying child support pursuant to this Court's Modified Order issued October 24, 2019. Any arrearages should be brought forward and remain due and collectible by Cuyahoga CSEA.*

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [various criminal offenses or] any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an

adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

*Not applicable.*

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

*Father did continuously and willfully deny Mother her right to parenting time with the parties' eldest daughter, [C.C.], then age 17, during the period July 1, 2017 through [C.C.'s] 18th birthday (on January 29, 2018).*

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

*Neither parent has expressed an intention of relocating outside of Ohio, and this Court presently has custody of the children's passports. However, based upon the evidence, it is necessary that these passports be placed in the future care and control of Mother exclusively in order to preclude an international custody dispute as Nigeria, the country of both parties' origin[,] is not a signatory to the Hague Convention. Neither parent should be permitted to travel or remove the children (or any of them) outside the Continental USA without a future order of the Cuyahoga County Court of Common Pleas.*

(Emphasis added.)

{¶ 72} Based on the limited record before us, we cannot say that the trial court's decision to terminate the shared parenting plan and to designate Mother residential parent and legal custodian of the parties' three minor children was unreasonable, arbitrary or unconscionable so as to constitute an abuse of discretion. The findings of fact set forth in the September 25, 2020 judgment entry support the trial court's decision that it was in the children's best interest to terminate the shared parenting plan and designate Mother residential parent and legal custodian. Further, the trial court's decision is consistent with the written reports and recommendations submitted by the GAL and the FES evaluator.

{¶ 73} Father's fourth assignment of error is overruled to the extent it relates to the trial court's termination of the shared parenting order and custody determination.

### Child Support Order

{¶ 74} In his fourth assignment of error, Father also argues that the trial court erred and abused its discretion in ordering him to pay Mother $2,444.83 per month in child support. Father contends that the trial court's child support determination was "based on incorrect data collected only from Mother," including inaccurate information regarding the parties' income, out-of-pocket health insurance premiums and child care expenses, and that the trial court should have applied a deviation under R.C. 3119.23 based on the fact that the children spend "more than 135 days per year" with Father. Father contends that if "correct data" had been used in calculating his child support obligation, his monthly child support

obligation would be $1,127.21 per month (including cash medical and the processing

fee) instead of $2,444.83 per month (including cash medical and the processing fee).

{¶ 75} As stated above, a trial court abuses its discretion when it applies the

wrong legal standard. Although given the absence of a transcript, we cannot find

error with the trial court's factual findings, we can still review the trial court's final

judgment for legal errors.

{¶ 76} In this case — as stated in the trial court's September 25, 2020

judgment entry — the trial court applied R.C. 3119.02 and 3119.30(A) and (C) in

determining the amount of Father's child support obligation.

{¶ 77} R.C. 3119.02 states:

> In any action in which a court child support order is issued or modified
> * * * the court * * * shall calculate the amount of the parents' child
> support and cash medical support in accordance with the basic child
> support schedule, the applicable worksheet, and the other provisions of
> Chapter 3119. of the Revised Code. The court or agency shall specify
> the support obligation as a monthly amount due and shall order the
> support obligation to be paid in periodic increments as it determines to
> be in the best interest of the children. In performing its duties under
> this section, the court or agency is not required to accept any
> calculations in a worksheet prepared by any party to the action or
> proceeding.

{¶ 78} When the combined annual income of both parents is greater than

the maximum annual income listed on the basic child support schedule, however,

the standard child support guidelines set forth in R.C. 3119.02 are not applicable.

Instead, R.C. 3119.04 applies.[11] R.C. 3119.04 provides in relevant part:

---

[11] R.C. 3119.30(A) and (C) address health care coverage for the children, health care
expenses for the children that are not covered by private health insurance and the

If the combined annual income of both parents is greater than the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised Code, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined annual income equal to the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised Code, unless the court or agency determines that it would be unjust or inappropriate and therefore not in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings. * * *

{¶ 79} Effective March 28, 2019, the basic child support schedule established pursuant to R.C. 3119.021 listed a maximum annual income of $336,467.04. Thus, pursuant to R.C. 3119.04, in situations where the parents'

---

inclusion of a cash medical support amount in child support orders. R.C. 3119.30 states in relevant part:

> (A) In any action or proceeding in which a child support order is issued or modified, the court, with respect to court child support orders, * * * shall determine the person or persons responsible for the health care coverage of the children subject to the child support order and shall include provisions for the health care coverage of the children in the child support order. The order shall specify that the obligor and obligee are both liable for the health care expenses for the children who are not covered by private health insurance according to a formula established by each court, with respect to a court child support order[.] * * *

> (C) When a child support order is issued or modified, the order shall include a cash medical support amount consistent with division (B) of section 3119.302 of the Revised Code for each child subject to the order. The cash medical support amount shall be ordered based on the number of children subject to the order and split between the parties using the parents' income share.

combined income exceeds $366,467, the trial court must, on a case-by-case basis, consider the needs and standard of living of the children and of the parents. The trial court cannot issue an order that is less than the obligation that would have been computed under the basic worksheet for gross income of $366,467 — i.e., the amount computed under the child support worksheet for gross income of $366,467 is generally the floor but not the ceiling of the potential range of child support — unless the trial court determines that it would be unjust or inappropriate and, therefore, not in the best interest of the child or either parent to order that amount, and includes such a finding in its journal entry. R.C. 3119.04; *see also Graham v. Graham*, 2020-Ohio-1435, 153 N.E.3d 843, ¶ 11 (3d Dist.).

{¶ 80} Here, the parents' combined annual income exceeds $336,467.04. Although they contain different income figures, both the parties' stipulations filed on January 31, 2020 and the child support worksheet attached to and incorporated within the trial court's September 25, 2020 final judgment entry list a combined annual income for the parents of over $460,000. There is, however, no indication in the final judgment entry that the trial court complied with R.C. 3119.04 in determining Father's child support obligation. In its final judgment entry, the trial court made no mention of R.C. 3119.04 and there is nothing to otherwise suggest that the trial court considered the needs and the standard of living of the children and the parents in determining the amount of Father's child support obligation in this case.

{¶ 81} Instead, the trial court quoted R.C. 3119.02 and 3119.30(A), (C) [misidentified in the judgment entry as R.C. 3109.30(A) and (C)]. The trial court attached and incorporated a copy of the "sole/shared child support computation worksheet" dated October 9, 2019 that was included with Mother's October 11, 2019 motion to modify temporary child support, indicating that it was "[t]he worksheet used to compute child support and cash medical support under R.C. 3119.022 or 3119.023," and found that "[i]t is appropriate pursuant to R.C. 3109.19,[12] R.C. 3109.30(A) [sic] and 3109.30(C) [sic] for this Court to make its Interim or Modified Orders relating to the payment of child support, and cash medical support and health insurance coverage 'permanent' subject to further order of Court."

{¶ 82} Because, as evident from the face of the trial court's September 25, 2020 final judgment entry, the trial court applied the wrong legal standard in determining the amount of Father's child support obligation, we find that the trial court abused its discretion in ordering Father to pay $2,444.83 in monthly child support. The trial court's child support order is reversed and the matter is remanded for the trial court to determine the amount of Father's child support obligation, considering the needs and the standard of living of the children and of the parents, in accordance with R.C. 3119.04.

{¶ 83} Father's fourth assignment of error is sustained to the extent it relates to the trial court's child support order.

---

[12] R.C. 3109.19 addresses parentage or support actions brought by a grandparent who is providing support to child born to unmarried and unemancipated minor. As such, it has no application here.

**Evidentiary Rulings and Orders Relating to GAL**

{¶ 84} In his sixth assignment of error, Father argues that the trial court erred and abused its discretion in making various evidentiary rulings that "exclud[ed] [F]ather's narratives" in the divorce action and restricted his presentation of evidence at the hearing. Father also contends that the trial court erred in denying his motion to replace/remove the GAL, in striking his rebuttal to the GAL's October 19, 2019 report and in denying his January 7, 2019 amended motion to show cause.[13]

{¶ 85} Father does not specifically identify in his brief what evidence he sought to present at the hearing, but was precluded from presenting, other than to state that he wanted to introduce evidence of "a report of child negligence and in jury to C.T.C., which occurred on 10/29/2013 at Mother's residence" and evidence of the parties' background and circumstances prior to the shared parenting plan in March 2013.

{¶ 86} As a general matter, a trial court has wide discretion in the admission and exclusion of evidence and a trial court's decision regarding the admissibility of evidence will not be reversed absent a clear showing of abuse of that discretion and material prejudice to the appellant. *See, e.g., Kinas v. Kinas*, 8th Dist. Cuyahoga

---

[13] In his sixth assignment of error, Father also claims the trial court erred and abused its discretion in denying his motion to vacate the trial court's May 2018 order designating Mother the residential parent for school purposes with authority to make school decisions for U.C.C. and in overruling Father's objections to the magistrate's decision denying his motion for reconsideration of the order denying his motion to vacate. For the reasons explained above, any possible error in those interim rulings is now moot.

No. 98965, 2013-Ohio-3237, ¶ 35. In any event, without a transcript showing what evidence was introduced and what evidence was excluded at the hearing, we must presume regularity and conclude that any claimed error did not provide grounds to reverse the trial court's judgment. *See, e.g., Knapp*, 61 Ohio St.2d at 199, 400 N.E.2d 384; *cf. Adams v. June*, 3d Dist. Putnam No. 12-20-04, 2021-Ohio-168, ¶ 11-14 (where appellant did not provide a copy of the trial transcript, appellant could not prove an error occurred and the appellate court had "no choice" but to conclude appellant's assignment of error did not provide grounds to reverse the trial court's decision).

{¶ 87} Furthermore, an appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). Pursuant to App.R. 16(A)(7), such arguments are to be presented within the body of the merit brief. "'[P]arties cannot simply incorporate by reference arguments that they made to the trial court in their appellate brief.'" *Young v. Kaufman*, 2017-Ohio-9015, 101 N.E.3d 655, ¶ 44 (8th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. Summit No. 28069, 2016-Ohio-7090, ¶ 14. An appellate court may disregard an assignment of error presented for review if the appellant fails to identify in the record the error on which the assignment of error is based, fails to cite to any legal authority in support of an argument or fails to argue the assignment separately in the brief, as required under App.R. 16(A)(7). *See*

App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."); *Johnson v. New Direction IRA F.B.O. King C. Lam*, 8th Dist. Cuyahoga No. 106628, 2018-Ohio-4608, ¶ 10.

{¶ 88} Father's mere identification of motions he contends were improperly decided in this assignment of error and his conclusory assertions in his brief that the trial court's rulings "infringe[d] on [his] constitutional rights," "prevented [M]other from having to defend herself against [F]ather's allegations or narratives" and allowed the GAL "to present the court with unbalanced and incorrect perspectives of the circumstances of the children and their parents" without any explanation, citation to the record or citation to legal authority supporting his assertions, do not satisfy Father's obligations under App.R. 16(A)(7). Likewise, Father's attempt to incorporate by reference "numerous case laws * * * discussed in [his] motion to vacate the ex parte order, filed on 05/23/2018" does not comply with App.R. 16(A)(7).

{¶ 89} An appellate court is "not obliged to construct or develop arguments" to support an appellant's assignment of error and 'will not "guess at undeveloped claims on appeal."'" *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 56 (8th Dist.), quoting *State v. Piatt*, 2020-Ohio-1177, 153 N.E.3d 573, ¶ 39 (9th Dist.), quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. "If an argument exists that can support this assigned error,

it is not this court's duty to root it out." *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 72, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998).

{¶ 90} Accordingly, Father's sixth assignment of error is overruled.

**Court Costs**

{¶ 91} In his seventh and final assignment of error, Father argues that the trial court erred and abused its discretion in ordering him to pay court costs because the trial court's order "is not in compliance with [R.C.] 3105.73(B)." R.C. 3105.73(B) governs the award of attorney fees and litigation expenses in postdecree proceedings. It provides, in relevant part:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage * * *, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

R.C. 3105.73(B).

{¶ 92} Father contends that it was "not just and equitable" for the trial court "to punish [F]ather for litigation by assigning court fees to him" because the litigation "did not improve the circumstances of the children but made it worse" and because Father has "been placed in financial hardship" as a result of the litigation.

{¶ 93} In this case, the trial court ordered Father to pay "costs" pursuant to Civ.R. 54(D), not Mother's "attorney's fees and litigation expenses" pursuant to R.C.

3105.73(B).  The trial court's September 25, 2020 judgment entry indicates that Mother voluntarily dismissed her motion for attorney fees after the hearing.

{¶ 94} Civ.R. 54(D) states: "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."  We review a trial court's ruling regarding the allocation of costs for abuse of discretion.  *See, e.g., Strauss*, 2011-Ohio-3831, at ¶ 79, citing *D'Hue v. D'Hue*, 8th Dist. Cuyahoga No. 81017, 2002-Ohio-5857, ¶ 120.

{¶ 95} In this case, Mother was the prevailing party on her motion to terminate the shared parenting plan and to modify the parenting time schedule — the motion at the heart of this matter.  The record reflects that Father filed numerous unsuccessful motions during the course of the proceedings.  Based on the record before us, we cannot say that the trial court abused its discretion in ordering Father to pay court costs.  Father's seventh assignment of error is overruled.

{¶ 96} The trial court's child support order is reversed and the matter is remanded for the trial court to determine the amount of Father's child support obligation, considering the needs and the standard of living of the children and of the parents, in accordance with R.C. 3119.04.  The trial court's decision is otherwise affirmed.

{¶ 97} Judgment affirmed in part; reversed in part; remanded.

It is ordered that appellant and appellee shared the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common

Pleas Court, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR