[Cite as *Graham v. Graham*, 2020-Ohio-1435.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

TIMOTHY P. GRAHAM,

                                   CASE NO. 14-19-18

    PLAINTIFF-APPELLEE,

    v.

PATRICIA L. GRAHAM,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 14-DR-0012

**Judgment Affirmed**

**Date of Decision:  April 13, 2020**

APPEARANCES:

    *John H. Cousins IV* **for Appellant**

    *Bruce A. Hyslop* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Patricia L. Graham ("Patricia") brings this appeal from the judgment of the Union County Court of Common Pleas, Domestic Relations Division, modifying the child support paid by plaintiff-appellee Timothy P. Graham ("Timothy"). On appeal, Patricia alleges that the trial court erred in calculating the child support and by denying her motion for attorney fees. For the reasons set forth below, the judgment is affirmed.

{¶2} On November 17, 2014, the trial court entered a decree of divorce and found that the shared parenting plan of the parties children was in their best interest. Doc. 52. The trial court ordered Timothy to pay child support in the amount of $1,250 per month. *Id.* At the time of this order, the parties combined income was approximately $228,800.70, which exceeded the $150,000 maximum scheduled income of the worksheet. *Id.*

{¶3} On May 2, 2018, the Union County Child Support Enforcement Agency filed an administrative adjustment recommendation that Timothy now pay child support in the amount of $3,221.71. Doc. 54. The recommendation determined that Timothy had an adjusted gross income of approximately $267,724 and Patricia had an adjusted gross income of approximately $85,593 for a combined income of approximately $353,318. *Id.* The amount of child support was extrapolated because the amount exceeded the $150,000 schedule set by statute. *Id.* Timothy objected to the recommendation and requested a court hearing. *Id.* A hearing was set for July

17, 2018. Doc. 59. On July 10, 2018, Patricia requested a continuance of the hearing to allow for additional discovery. Doc. 67. The motion for the continuance was granted. Doc. 68.

{¶4} On August 1, 2018, Patricia filed a motion to reallocate parental rights and responsibilities which included a request to increase Timothy's child support to $3,194.26 per month. Doc. 76. Timothy filed his memorandum contra Patricia's motion on August 17, 2018. Doc. 80. On September 20, 2018, Patricia filed a motion for attorney fees and litigation expenses. Doc. 81. Timothy also filed a motion for attorney fees and litigation expenses on October 4, 2018. Doc. 83. A hearing was held on all motions on November 29, 2018. Doc. 88. On January 23, 2019, the magistrate issued his decision. Doc. 88. The magistrate determined that Timothy's income for child support purposes was $246, 897 and Patricia's income for child support purposes was $87,318. *Id*. at 7. The magistrate then determined that using the extrapolation method from the support worksheet, the guideline support from Timothy would be $2,954.47. *Id*. The magistrate then adjusted the amount to account for the in-kind support received and reduced the amount of child support to $2,600 per month. *Id*. at 10. The magistrate denied both motions for attorney fees finding that the facts did not support the requests. *Id*. at 11-12.

{¶5} On January 29, 2019, Timothy filed objections to the magistrate's decision claiming 1) the effective date of the modification was prejudicial and 2) the magistrate improperly calculated the support when considering the in-kind

contributions. Doc. 91. Patricia filed cross-objections to the magistrate's decision claiming the magistrate erred by 1) excluding Timothy's "additional" income, 2) denying her motion for attorney fees, and 3) failing to modify the shared parenting decree. Doc. 92. On April 19, 2019, the trial court entered judgment on the objections. Doc. 94. The trial court overruled all of the objections, but modified the magistrate's decision as to the amount of child support owed. *Id.* The trial court ordered that from May 1, 2018 until March 28, 2019, Timothy would owe monthly child support of $2,600. *Id.* However, the trial court noted that on March 28, 2019, a new child support statute became effective that set forth a worksheet for combined incomes of up to $336,467.04 rather than the previous $150,000. *Id.* at 17. Since the combined income of Patricia and Timothy was less than that amount, the trial court found the statute to be applicable to all support after the effective date. *Id.* As of the effective date of the statute, the monthly child support was reduced to $1,921.91 as determined by the appropriate worksheet. *Id.* at 19 and Ex. C. Timothy did not appeal the judgment of the trial court. Patricia filed a timely notice of appeal from this judgment. Doc. 96. On appeal, Patricia raises the following assignments of error.

## First Assignment of Error

**The trial court abused its discretion and erred as a matter of law by calculating child support under the statutory amendments in H.B. 366.**

**Second Assignment of Error**

**The trial court abused its discretion and erred as a matter of law by excluding $39,861 from [Timothy's] gross income under R.C. 3119.05(K).**

**Third Assignment of Error**

**The trial court abused its discretion and erred as a matter of law by denying [Patricia's] motion for attorney fees and litigation expenses.**

For the purpose of clarity, we will address the assignments out of order.

*Calculation of Income*

{¶6} In the second assignment of error, Patricia claims that the trial court erred by excluding $39,861 from Timothy's gross income. This alleged income was additional income that Timothy earned by performing chart reviews that he had done from his residency. Timothy's tax returns showed that in the three years prior to the hearing, he had earned an average of $39,861 in addition to his annual salary of $246,897. Patricia argues that the trial court erred by not including this income in the child support calculation.

{¶7} At the hearing, Timothy testified that he was employed as the Program Director for the Family Medicine Residency Program at Mount Carmel/St. Ann's. Vol. 1 Tr. 42-43. Timothy testified that at the time of the hearing, his salary was $246,897, which included a recent increase of $6,000 for being the director of the department. *Id*. at 44. Timothy also indicated that he received a stipend of $6,000 for being the elected department chair, but that his position would end at the end of

the year and there was no guarantee he would receive it again. *Id*. at 46. From the time of the divorce forward, Timothy also had been working reviewing charts as an independent contractor for CareWorks. *Id*. at 47. Timothy testified that he had stopped working for CareWorks in April of 2018. *Id*. at 50-51. When asked why he stopped working for CareWorks, Timothy testified as follows.

**Q. Why don't you explain to the Court why you stopped working for CareWorks?**

**A. Several reasons, actually. Um, at around – around that time, um, our – my level of responsibility in my job at St. Ann's actually increased. We're down a couple of faculty members, so I'm doing more clinical responsibility within the program to keep it running effectively and be able to train our residents.**

**Q. Keep your voice up.**

**A. I'm sorry, yes, I tend to have a quiet voice. I'm sorry. Secondly, I am, also completing my Master's of Health Professions Education through the University of Illinois at Chicago. This year is my focus year on completing my thesis so I can actually get that degree done. Um, UIC gives you five years to get your Master's done. This is my fifth year, so I am devoting a significant amount of time to preparing, um, reviewing and getting ready to defend my thesis before this year ends.**

**Q. Now, wait a minute. Make sure you clarify. This year –**

**A. I'm sorry, this – I think academic year, so yeah, thankfully, it's not this month but by the end of July I need to have my – I need to have my thesis defended.**

**Q. Okay.**

**A. Thirdly, next year is – next year is 2019, is my Board recertification date. So, um, in family medicine, we're on a ten year Board cycle, and so I need additional time to actually**

prepare for those Boards and make sure that I actually pass them because my employment is contingent upon me being a Board certified family medicine physician. So, this tends to be a high stakes endeavor for all of us in the practice and it's not atypical for us to spend additional time trying to prepare for that.

Next – I forget what number I'm on – but next I, also, have recently joined the Accreditation Council for Graduate Medical Education's Milestone Review Committee which is a national opportunity to actually help shape the assessment system for residents in family medicine which are going to go into effect in 2020, so that's going to require additional time of me in review, revision over the next year-and-a-half or so.

And, finally, a couple months after that I was getting married and I am actually going to and do now have somebody at home with me every night. Um, my wife would prefer that I don't do that because she would rather have me at home spending time with her and with the family than with my nose in charts and so that was a good motivation for me as well.

Q. Would you tell me, the Board certification, that's kind of front and center, isn't it, in terms of your job?

A. Out of everything that I mentioned, that's probably the most critical to me continuing employment. Virtually every place requires Board certification but most clearly with me being in graduate medical education we have to be Board Certified. There's not – there's not another way around that.

Q. You really didn't tell us. What is the last year for obtaining that Board certification?

A. A, yeah, I'm sorry, it is in 2019. It's a set time. It's a ten year – a ten year cycle and my ten year cycle is coming up in 2019.

Q. So, when do you plan on taking your Boards for recertification?

A. I have two opportunities. Either in April or in November depending upon level of preparation. Currently, I have two self-

**study Board review courses that I've ordered that I am going through on a regular basis in some of my down time to make sure that I'm actually prepared.**

**Q. Did you take these items into consideration when you decided not to take CareWorks' file reviews any further past April of this year?**

**A. Yes, I did. Um, and if you look at that sheet, prior to that time, I started reducing the amount I was doing to see if I could just reduce my – my number of charts and still be able to keep up with everything that I'm trying to do and even reducing it was difficult, so I ended up – I ended up just terminating it.[1]**

Vol. 1 Tr. at 51-54.[2] The trial court found this testimony to be credible and determined that the additional income would no longer be included in Timothy's income. Doc. 94 at 13. Patricia argues that the trial court erred by excluding it.

{¶8} "Income" is defined as the gross income of a parent who is employed to full capacity. R.C. 3119.01(C)(9)(a).

**"Gross income" means, except as excluded in division (C)(12) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States**

---

[1] The "sheet" referenced was Ex. 2 which showed a decrease in monthly income from over $2,000 a month in payments to less than $400 a month by the final disbursement shown.
[2] Evidence of Timothy's professional obligations was presented in Ex. 4.

**department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source.**

R.C. 3119.01(C)(12). However, a trial court may disregard additional income from a second job under appropriate circumstances. R.C. 3119.05(K).

{¶9} Here, Patricia claims that the trial court erred by believing the testimony of Timothy that he was no longer working for CareWorks. A review of the record shows that Patricia presented no evidence that Timothy was still conducting chart reviews for CareWorks, and is instead asking the trial court to impute the additional income that Timothy previously earned to his current income. However, the trial court found Timothy's testimony that he was no longer conducting chart reviews to be credible. The trial court also found his reasons for stopping the reviews to be rational. This Court notes that a drop in income due to a voluntary choice to quit a second job is not necessarily a demonstration of voluntary underemployment. *Montgomery v. Montgomery*, 3d Dist. Union No. 14-14-22, 2015-Ohio-2976, ¶ 54. "The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Id.* quoting

*Woloch v Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist. 1994). "[T]o avoid the imputation of potential income, the parent must show an objectively reasonable basis for terminating or otherwise diminishing employment. Reasonableness is measured by examining the effect of the parent's decision on the interest of the child." *Aldo v. Angle*, 2d Dist. Clark No. 09-CA-103, 2010-Ohio-2008, ¶ 35. "There are times when a court must respect the reasonable choice of an obligor to attempt to better his life in the hope that such a choice will ultimately benefit the lives of the children." *Id.* at 36. The enforcement of child support obligations was not intended to force parents to keep the same jobs they had at the time of the divorce. *Id.* Parents subject to child support orders are free to adjust their employment as long as they are not avoiding their responsibilities to meet the needs of their children. *Id.*

{¶10} A review of the testimony shows that even after choosing to stop his second job, Timothy was fully employed and was earning a significant amount of money ($246,897) which allowed him to continue to provide for the needs of his children. Although the statute allows a trial court to impute income if a party is underemployed, it does not require a party to remain overemployed.[3] Timothy testified to five reasons why he chose not to continue working as an independent contractor with CareWorks: 1) increased responsibility at his primary job; 2) a need

---

[3] Many parents could earn more money to support their children if they worked more hours, but at what cost? A trial court must strike a balance between earning sufficient income to provide for the needs of their children with the time a parent is able to spend with their children.

to complete his advanced degree; 3) a need to study for recertification to retain his primary job; 4) participation in a profession assessment committee; and 5) a desire to spend more time with his family. The trial court believed this testimony and found these reasons to be an appropriate circumstance for not counting the past secondary income in the current calculation.[4] As the trial court's determination was supported by competent, credible evidence, this court does not find that the trial court abused its discretion in choosing to exclude the evidence from a prior second job. The second assignment of error is overruled.

*Calculation of Child Support*

{¶11} In the first assignment of error, Patricia alleges that the trial court erred by using the amended worksheet that went into effect on March 28, 2019, to calculate child support after that date. "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. "In any action in which a court child support order is issued or modified, * * * the court or agency shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119 of the Revised Code." R.C. 3119.02.

---

[4] Contrary to Patricia's position that there was no evidentiary support for the trial court's conclusion, there was both testimony and exhibits.

{¶12} In this case, the relevant facts are that on May 17, 2018, Timothy filed a request for a hearing following an administrative adjustment of his child support. The hearing was held in November of 2018. On January 23, 2019, the magistrate issued a decision modifying the amount of child support. Both parties filed objections. The trial court did not rule on the objections until April 19, 2019. However, on March 28, 2019, a new child support calculation schedule went into effect, In reaching its decision, the trial court affirmed the decision of the magistrate up until the effective date of the revised R.C. 3119.021. As of that effective date, the trial court adjusted the amount of child support to comply with the new statutory child support schedule.

{¶13} Under the prior version of R.C. 3119.021, a combined income of more than $150,000 was outside of the scope of the basic child support schedule. The trial court was instructed to do as follows.

> **(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or oblige to order that amount. If**

> **the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.**

R.C. 3119.04(B) effective date 3-22-2001. As of March 28, 2019, this was changed so that the scope of the basic child support schedule was extended to $336,467.04. R.C. 3119.021 effective date 3-28-2019. If the parties' combined income is lower than the maximum amount, the trial court is required to use the standard worksheet form to calculate child support. R.C. 3119.022(A) effective March 28, 2019. R.C. 3119.04 was also amended to apply to only those cases where the combined parental income exceeds the amount set forth in R.C. 3119.021. R.C. 3119.04 effective date March 28, 2019.

{¶14} Here, the trial court determined that the combined income of the parties was $334,215. Doc. 94 at 17. As of March 28, 2019, this amount would be subject to being determined by the statutory child support calculation and not a case-by-case basis as set forth in R.C. 3119.04. To avoid having the statute apply retroactively, the trial court only applied the statutory calculation from the effective date of the statute, not to the time prior to that when the calculation was required to be determined on a case-by-case basis. Doc. 94 at 18. The original child support ordered at the time of the divorce was $1,250 per month. *Id*. at 8. From May 1, 2018, until March 27, 2019, the trial court ordered that Timothy pay $2,600 per month for child support. *Id*. at 19. From March 28, 2019, forward, Timothy was required to pay child support in the amount of $1,921.91. *Id*.

{¶15} Patricia argues that the trial court erred by applying the new statutory calculations after the effective date of the statute rather than continuing the prior amount of $2,600. Patricia claims that this denied her "the right to obtain a case-by-case analysis of Father's child support 'obligation'". Appellant's Brief at 10. In support of this argument, Patricia cites to R.C. 1.58.

> **The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:**
>
> **(1) Affect the prior operation of the statute or any prior action taken thereunder;**
>
> **(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;**
> **(3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;**
>
> **(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.**

R.C. 1.58(A). A review of the record shows that Patricia's argument fails.

{¶16} First, this court notes that the trial court did not apply the amended statute retroactively, but only prospectively. Patricia was given the benefit of a case-by-case determination from the beginning of the case until the effective date of the statute. The trial court only applied the calculation worksheet prospectively and only after the effective date of the statute. Before the effective date of the statute,

there was no applicable worksheet. *See Guagenti v. Guagenti*, 3d Dist. Allen No. 1-16-47, 2017 -Ohio- 2706, 90 N.E.3d 297. Thus, the trial court did not use the incorrect worksheet.

**{¶17}** Second, the prior statute allowed the trial court to consider any factors in determining the appropriate amount of child support on a case-by-case basis. "A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order." *Clark v. Clark*, 3d Dist. Henry No. 7-15-09, 2015-Ohio-3818, ¶ 28, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).

> **Under R.C. 3119.04(B), "domestic relations courts have more discretion in computing child support when the parents' combined income is greater than $150,000 annually." * * * This statute "neither contains nor references any factors to guide the court's determination in setting the amount of child support; instead, the court must determine child support on a case-by-case basis." * * * Thus, R.C. 3119.04(B) "leaves the determination entirely to the court's discretion, unless the court awards less than the amount of child support listed for combined incomes of $150,000."**

*Guagenti, supra* at ¶ 76 (citations omitted). The minimum support as determined by the worksheet would have Timothy paying $1,330.17 per month. See Doc. 94 at Ex. A. Pursuant to R.C. former 3119.04(B), any amount of support in excess of this amount is left entirely to the discretion of the trial court. *Guagenti, supra*. Without any set factors, the trial court could reasonably have concluded that a new calculation, as determined appropriate by the state legislature, was an acceptable

factor to consider and used it to determine the appropriate amount of child support. We note that the new calculated amount is still in excess of the minimum support established by the prior version of the statute and thus would have been acceptable under the case-by-case evaluation.

{¶18} Finally, there is no prejudice in the trial court's ruling. Were we to remand, the trial court would be required to use the new applicable worksheet for the calculation of child support. *Sweeney v. Sweeney*, 1st Dist. Hamilton C-180076, 2019-Ohio-1750, ¶ 46, 135 N.E.2d 1189. In *Sweeney*, the original decree of dissolution and child support order was made in November 2008. *Id*. at ¶ 2. Child support was subsequently modified in 2011. *Id*. In 2017, the father filed for a reallocation of parental rights and a modification of child support. *Id*. at ¶ 3. The trial court granted the motion to modify child support in January 2018. *Id*. at ¶ 15. The father subsequently appealed the order of child support and made several claims including that the trial court used the incorrect worksheet to calculate the amount of support. *Id*. at ¶ 44. The appellate court noted that upon remand, "the trial court's calculations will be governed by the provisions of H.B. No. 366." *Id*. at ¶ 46. Like in *Sweeney,* the motion here was filed before the amendments to the statutes. However, the remand would be after the effective date of the statute. Thus, any new calculations would need to be done in accord with the statute.

{¶19} Even if we were to agree with Patricia that the trial court abused its discretion, remand for determination on a case-by-case basis, and the trial court

granted child support in the amount of $2,600 per month, the result would be a waste

of judicial resources.

> **If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.**

R.C. 3119.79(A).  If the child support calculation showed a difference of greater

than $260 (ten percent of $2,600), then Timothy would be entitled to a modification

of child support by law.  The current worksheet shows a calculation of $1,921.91,

which is a difference of $678.09.  See Doc. 94 at Ex. B.  This amount exceeds $260,

so he would be entitled to a modification as a matter of law.  Having determined

that the trial court did not abuse its discretion in calculating child support, the first

assignment of error is overruled.

### *Denial of Attorney Fees*

{¶20} In the third assignment of error, Patricia claims that the trial court erred

by denying her request for attorney fees.

> **In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court**

**may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.**

R.C. 3105.73(B).  A determination as to whether to award attorney fees in a domestic relations case is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.  *Cichanowicz v. Cichanowicz*, 3d Dist. Crawford No. 3-13-05, 2013-Ohio-5657, ¶ 92.  An abuse of discretion is a decision in which the trial court's attitude is unreasonable, arbitrary, or unconscionable.  *Id*.

{¶21} The statute only requires the trial court to determine whether an award would be equitable and provides a partial list of factors to consider.  R.C. 3105.73(B).  However, the statute also allows the trial court to consider any other relevant factors.  *Id*.  Here, the trial court noted that the only remedy Timothy had for the administrative agency's modification of his child support was to file an appeal with the trial court.  The trial court also noted that Timothy prevailed on his motion as the amount of his child support was reduced from the agency's recommendation.  The administrative review set Timothy's monthy child support payment at $3,221.71.  Doc. 54.  Both the magistrate and the trial court found this amount to be too high and reduced the amount by several hundred dollars.    The trial court considered the income of the parties and determined that both had

"substantial income". The trial court also noted that Patricia had also filed motions to modify the shared parenting order, thus also seeking court intervention. Specifically, the trial court found it "inequitable that an individual in [Timothy's] position, who by statute must resort to Court review of a CSEA Order, should be required to pay for the other party's attorney fees regarding issues raised outside the scope of the original Court requested review." Doc. 94 at 20. A review of the record shows there was competent, credible evidence to support the conclusions of the trial court. The decision of the trial court was not arbitrary, unreasonable, or unconscionable. Thus, this court does not find that the trial court abused its discretion. The third assignment of error is overruled.

{¶22} Having found no prejudice in the particulars assigned and argued, the judgment of the Union County Court of Common Pleas, Domestic Relations Division, is affirmed.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**