[Cite as *Wireman v. Wireman*, 2023-Ohio-3007.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

RENAE N. WIREMAN NKA
MIKOLAJCZAK,

    PLAINTIFF-APPELLANT,               CASE NO. 1-22-72

    v.

SCOTT A. WIREMAN,                    O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR 2019 0017

**Judgment Affirmed**

**Date of Decision: August 28, 2023**

APPEARANCES:

    *John H. Cousins, IV* for Appellant

    *Andrea M. Bayer* for Appellee

Case No. 1-22-72

**WALDICK, J.**

{¶1} Plaintiff-appellant, Renae Wireman n.k.a. Mikolajczak ("Renae"), appeals the November 17, 2022 judgment of the Allen County Court of Common Pleas, Domestic Relations Division, in which the trial court modified the parties' shared parenting plan, decided upon a school placement for the parties' two minor children, and ordered Renae to pay child support to Scott.

{¶2} For the reasons that follow, we affirm.

*Procedural Background and Relevant Facts*

{¶3} The parties, Renae and Scott, were married in Tennessee in April of 2015. Their son, "C.W.", was born later in 2015 and their daughter, "H.W.", was born in 2017. On April 10, 2020, pursuant to a negotiated agreement, the parties' marriage was terminated by a decree of divorce. At that time, the parties entered into an agreed shared parenting plan ("SPP") that was approved and adopted by the trial court.

{¶4} In relevant part, the SPP provided that the children were to reside with Renae, with Scott having parenting time from Thursday evening until Saturday morning one week and from Thursday evening until Monday morning the following week, on an ongoing basis. The SPP designated Renae as the residential parent for any time the children were in her custody and Scott was designated the residential parent for any time the children were in his custody.

-2-

**{¶5}** With regard to child support, the SPP provided that Scott was to pay Renae $250.00 per month per child, for a total of $510.00 per month including administrative fees.

**{¶6}** With regard to school placement, the SPP provided:

> Mother and Father will make efforts to reach an agreement as to where the children will attend school; and the Court will have/retain continuing jurisdiction to decide where the children will attend school if the parties cannot agree to the same; and if the parties cannot reach an agreement regarding the school placement of the children, then either party or both parties may file the appropriate motion with the Court for the Court to decide the school placement of the children.

(Docket No. 79, Exh. B).

**{¶7}** The SPP further provided that the parties' older child, C.W., reaching kindergarten age would constitute a change in circumstances as required for a modification of the SPP pursuant to R.C. 3109.04, and it noted that either party could then file a motion to modify parenting time, school district, child support, and income tax dependency exemptions.

**{¶8}** In February of 2020, approximately two months prior to the divorce being finalized and also prior to the parties entering into the agreed SPP that was incorporated into the final decree of divorce, Renae moved herself and the two children from the Lima, Ohio area to Perrysburg, Ohio, where Renae rented a home and began a new job in Toledo, Ohio with Husky/Cenovus, who had also been Renae's employer in Lima. The job in Toledo was a two-year contract-position,

and was not believed to be a permanent position at the time Renae changed employment and moved in February of 2020.

{¶9} On November 5, 2020, Renae filed a motion to reallocate parental rights and responsibilities. In that motion, Renae requested that the SPP be terminated, that she be granted sole custody of the children, that she be designated the sole residential parent subject to Scott having parenting time, and that Scott be ordered to pay child support pursuant to the child support guidelines. On that same date, Renae also filed several other motions, which were ultimately resolved by agreement and which are not at issue in this appeal.

{¶10} On December 18, 2020, Scott filed a number of responses to the various motions filed by Renae on November 5, 2020. Then, on March 1, 2021, Scott filed a motion for modification of the SPP. In his motion, Scott asserted that the school placement issue was ripe for review as C.W. would be starting kindergarten in the 2021-2022 school year. Scott's motion asserted that, contrary to what was testified to at the time of the divorce, Renae appeared to have no intention of returning to Allen County from Perrysburg. Scott further asserted that Renae had been denying him participation in decision-making about the children's lives. Scott's motion asserted that if Renae did not intend to relocate back to Allen County, then it would be in the children's best interest for them to primarily reside with Scott in Allen County and attend school in the Bath Local School District.

Alternatively, Scott's motion proposed that if Renae did relocate back to Allen County, then it would be in the children's best interest to spend an equal amount of time with each parent.

{¶11} An evidentiary hearing on the parties' custody-related motions was held over the course of six different dates in 2021: June 21, 2021, August 2, 2021, August 18, 2021, September 27, 2021, September 29, 2021, and December 17, 2021. Renae called seven witnesses and also testified on her own behalf. Scott also called seven witnesses and testified on his own behalf.

{¶12} On August 19, 2021, while the multi-part evidentiary hearing was ongoing, the trial court issued a temporary order naming Renae as the residential parent for school placement purposes and ordering that the children be enrolled in school in Perrysburg for purposes of C.W. starting kindergarten. On August 20, 2021, the trial court issued a follow-up temporary order, in which the basis for the August 19th temporary order was expanded upon and in which Scott's parenting time was modified to every weekend, from after school on Friday until Sunday at 5:00 p.m.

{¶13} On October 28, 2022, the trial court filed a decision detailing the evidence presented in the multi-day hearing, making numerous findings of fact, and ultimately determining that, based on the totality of the evidence, it was in the best interest of the children to maintain a shared parenting relationship with the parties.

The trial court therefore specifically found that the children should attend the Bath Local School District so long as one parent continues to reside in the district or the children are open enrolled there, or until the parties mutually agree to a different school district where the children would qualify for attendance. As to parenting time, the trial court found that if Renae were to relocate to Findlay, Ohio or any other residence within 30-minutes of the Bath school district, then the parties should engage in week-to-week shared parenting, with the weekly exchange of the children occurring on Sundays at 6:00 p.m. Alternatively, in the event Renae did not relocate within those geographical limits, the trial court determined that the children should reside primarily with Scott during the school year, with Renae having parenting time every Wednesday after school and also on the first, second, and fourth full weekends of each month, from Friday after school until Sunday at 6:00 p.m. Additionally, if Renae did not relocate within the geographic proximity described, then the trial court found that that parties should engage in week-to-week shared parenting during the summertime, with the exchange occurring every Sunday at 6:00 p.m.

{¶14} In that October 28, 2022 decision, the trial court then went on to make rather extensive findings relating to child support and, after finding Scott to be under-employed by choice, imputed an annual income of $100,000.00 to Scott. Based on Scott's imputed annual income of $100,000.00 and Renae's established annual income of $137,700.00, the trial court determined that, commencing on

January 1, 2023, Renae should pay child support to Scott in the monthly amount of $95.13 per child, for a total of $194.07 per month, including processing fees.

**{¶15}** On November 17, 2022, the trial court filed its entry of judgment on those issues, which incorporated by reference the findings of fact made in the October 28, 2022 decision, as well as the orders from that decision regarding school placement, the modification to the shared parenting plan, and the updated child support order.

**{¶16}** On December 1, 2022, Renae filed the instant appeal, in which she raises two assignments of error for our review.

**First Assignment of Error**

**The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence in modifying the shared parenting plan and arbitrarily reversing its prior order of school placement.**

**Second Assignment of Error**

**The trial court abused its discretion in redesignating appellant as the obligor for child support purposes.**

*First Assignment of Error*

**{¶17}** In the first assignment of error, Renae argues that the trial court erred when it modified the parties' shared parenting plan and determined that it was in the children's best interest to attend school in the Bath Local School District in Lima, Ohio. Renae asserts that the trial court's decision was against the manifest weight of the evidence.

{¶18} The manifest-weight standard in a civil case is the same as it is in a criminal matter. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. The Supreme Court of Ohio has explained:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered * * * to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict [or decision], if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.)

*Id*. at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶19} An appellate court reviews a domestic relations court's decision regarding parental rights for an abuse of discretion. See, *e.g.*, *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). An abuse of discretion means that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis*, *supra*, at 418. The Supreme Court of Ohio has stated that this reason for the standard of review "is even more crucial in a child custody case." *Id.* at 419.

**{¶20}** "R.C. 3109.04 establishes the process for allocating parental rights and responsibilities between the parents of a minor child." *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, ¶ 8.

**{¶21}** R.C. 3109.04(F)(1) provides as follows:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶22}** Additionally, when determining whether shared parenting is in the best interest of the child, the trial court must consider R.C. 3109.04(F)(2), which states:

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a)   The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b)   The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)   Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)   The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)   The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶23} Finally, R.C. 3109.04 provides that, "[w]hen allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition."

{¶24} In the instant case, Renae specifically argues in the first assignment of error that the trial court abused its discretion and imposed a "relocation penalty" on Renae; that the trial court improperly disallowed testimony about the children's adjustment to the temporary parenting schedule in place at the time of the hearing; that the trial court made several findings unsupported by the record; and that the trial court ignored or did not give appropriate weight to evidence about the children's adjustment to the Perrysburg area.

{¶25} In response to those arguments, we note first that the record does not support Renae's claim that she was penalized for relocating to Perrysburg just prior

to the time of the divorce. While the trial court ultimately modified the SPP in a manner contrary to the result sought by Renae, that does not equate to a "penalty."

{¶26} Secondly, we find no merit to Renae's claim that the trial court improperly prohibited testimony about the children's adjustment to the temporary parenting schedule in place at the time of the hearing. A trial court has broad discretion in the admission or exclusion of evidence and an appellate court should not disturb the exercise of such discretion without a showing of material prejudice. See, *e.g.*, *Johnson v. Johnson*, 2d Dist. Greene No. 2019-CA-46, 2020-Ohio-1644, ¶ 36. Here, the trial court did not disallow evidence about the children's adjustment to the temporary parenting schedule but, rather, questioning on cross-exam about why Scott was asking for a parenting schedule for Renae that differed from what Scott had under the trial court's temporary orders. In prohibiting that line of questioning, the trial court noted that it was the court who imposed the temporary schedule upon the parties while the modification motions were pending and therefore found that it would be unfair to permit inquiry of Scott as to why Scott was asking for a schedule different than that. We do not find that ruling to be an abuse of discretion.

{¶27} Renae argues next that the trial court made several findings unsupported by the record. In its decision, the trial court set forth a detailed summary of the evidence adduced at the hearing and reached numerous factual

conclusions on the basis of that evidence. Our review of the record indicates that the trial court's summary of the evidence is accurate and that the factual conclusions reached by the court are reasonable inferences fully supported by the record.

{¶28} Finally, Renae claims that the trial court's decision was against the manifest weight of the evidence. Renae sought a termination of the original shared parenting plan with sole custody for herself and weekend visitation for Scott. Renae desired the children attend school in the Perrysburg School District where she had been living for a short time. On the other hand, Scott requested a continuation of shared parenting but with a school placement in Allen County where Scott lives and where Renae had lived until she voluntarily relocated to Perrysburg. The children were not interviewed, due to their young ages.

{¶29} The record establishes that both parties clearly love their children and that the children love both parents, have a good relationship with both parents, and are well-adjusted at both homes. The children also interact well and have a good relationship with Renae's boyfriend, now husband, and his young son. The children also have a significant and very close relationship with numerous members of Scott's family and extended family, all of whom are based in Allen County.

{¶30} Renae testified that her new job in the Toledo area permitted her to work from home several days per week, at a salary over that which she earned at her prior job in Allen County. However, Scott also testified that he had modified

his work schedule, worked in many instances from home, and made it a point to typically not schedule work projects during his parenting time with the children.

**{¶31}** Since moving to Perrysburg, Renae had enrolled the children in several sports programs and other activities in that area that the children seemed to enjoy. However, the driving distance to Perrysburg from Allen County, along with the cost of gasoline, made it prohibitive for Scott to attend the children's practices and games with any regularity.

**{¶32}** There was extensive evidence establishing that the relationship between Renae and Scott is quite contentious although, since the time of their divorce, the parties had been able to communicate fairly civilly about the children by using the OurFamilyWizard messaging program. However, the record also established an ongoing tendency on Renae's part to unilaterally make nearly all decisions regarding the children, and then to simply inform Scott of those decisions, as opposed to the parties first attempting to communicate and cooperate in making such decisions, as required under the original SPP.

**{¶33}** Ultimately, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial court must make. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). In this case, the trial court heard extensive testimony from the parties and witnesses for both parties, and the trial court was in the best position to judge the credibility of those witnesses. Our review

of the record indicates that the trial court engaged in a detailed analysis of all required factors, and the trial court's findings with regard to those factors were amply supported by the testimony and other evidence adduced at the hearing. Competent, credible evidence supports the custody and school placement decisions made by the trial court and those decisions are not against the weight of the evidence. Accordingly, the trial court did not abuse its discretion in that regard.

{¶34} The first assignment of error is overruled.

*Second Assignment of Error*

{¶35} In the second assignment of error, Renae argues that the trial court erred in ordering that she pay child support.

{¶36} With regard to child support, the original SPP provided that Scott was to pay Renae $250.00 per month per child, for a total of $510.00 per month including administrative fees. However, as part of the trial court's November 17, 2022 decision modifying the SPP, the trial court ordered that Renae pay child support to Scott in the amount of $95.13 per child, for a total of $194.07 per month including fees.

{¶37} "'It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion.'" *Graham v. Graham*, 3d Dist. Union No. 14-19-18, 2020-Ohio-1435, ¶ 11, quoting *Pauly v. Pauly*, 80 Ohio

St.3d 386, 390, 686 N.E.2d 1108 (1997). As we noted above, an abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore*, *supra*.

{¶38} In this case, Renae contends that the child support modification was an abuse of discretion because Scott did not request support, because Scott "declined" child support at the hearing, and because the trial court "provided no valid basis for its decision."

{¶39} Renae's argument is based primarily on the fact that Scott testified during the hearing that he was not was specifically asking that Renae be ordered to pay child support. However, Renae's assertion on appeal that Scott "declined" child support is inaccurate. The record reflects that Scott testified child support would "be nice" given the "money situation", before going on to say that his priority was the children and that money had nothing to do with it. (12/17/21 Tr., 24-25).

{¶40} More importantly, pursuant to R.C. 3119.24(A)(1):

A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code *shall* order an amount of child support to be paid under the child support order that is calculated in accordance with the [R.C. 3119.021] schedule and with the [R.C. 3119.022] worksheet, except that, if that amount would be unjust or inappropriate to the children or either parent and therefore not in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount. (Emphasis added.)

{¶41} Thus, because there was a modification of the shared parenting plan, it was necessary pursuant to R.C. 3119.24 for the trial court to review the existing

child support order and enter a new order. A trial court is obligated to follow the mandatory procedures outlined in R.C. 3119.24(A)(1), "regardless of whether the parties have reached an agreement on their own regarding child support." *Warner v. Warner* 3d Dist. Union No. 14-03-10, 2003-Ohio-5132, ¶ 13.

**{¶42}** Finally, Renae does not assert, much less establish, that the trial court's child support calculation was erroneous under the guidelines, nor does she argue that circumstances existed that would permit deviation from the guidelines.

**{¶43}** For all of those reasons, we cannot find that the trial court abused its discretion with regard to the child support order.

**{¶44}** The second assignment of error is overruled.

*Conclusion*

**{¶45}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Allen County Court of Common Pleas, Domestic Relations Division, is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**